IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BEEMAC LOGISTICS LLC,

*Plaintiff*,

v.

A2A LOGISTICS LLC,

*Defendant*.

Civil Action No. 2:25-cv-741

Hon. William S. Stickman IV

# MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Beemac Logistics LLC ("Beemac") filed its complaint against Defendant A2A Logistics LLC ("A2A") in the Court of Common Pleas of Beaver County, Pennsylvania (ECF No. 1-2), and A2A removed the case to the United States District Court for the Western District of Pennsylvania. (ECF No. 1). Beemac brings a claim for declaratory judgment, asking that the Court declare that A2A, pursuant to the terms of the Transportation Agreement ("the Agreement") executed by the parties, (1) "is obligated to fully defend, indemnify, save and hold Beemac harmless for any claims, losses, damages or judgments asserted by" its customer for damage caused by A2A; (2) "is obligated to reimburse Beemac for the attorneys' fees it incurred in this action" under Section 5(A) of the Agreement; and (3) is obligated to provide "such other and further relief as the Court deems just and proper." (ECF No. 1-2, pp. 8-9). A2A filed its Amended Answer, Affirmative Defenses and Counterclaim (ECF No. 16), bringing a counterclaim for breach of contract against Beemac for its alleged failure to pay the agreed-upon price for A2A's performance under the Agreement. Beemac filed a motion for summary judgment, at issue here, asserting that it is both "entitled to a declaratory judgment regarding A2A's obligations under [the

Agreement]" and "entitled to summary judgment on A2A's counterclaim." (ECF No. 35, pp. 1-2). For the following reasons, Beemac's motion for summary judgment will be granted.[1]

## I. FACTUAL BACKGROUND

Beemac is "a professional logistics company that provides logistics services, including services as a property broker pursuant to a license issued by the Federal Motor Carrier Safety Administration." (ECF No. 37, p. 1; ECF No. 40, p. 1). A2A is a trucking company that provides interstate transportation of property. (*Id.*). Azimzhon Usmanov ("Usmanov") is "the sole member and owner of A2A." (ECF No. 36, p. 2).

### A. Facts pertaining to the Transportation Agreement.

Beemac and A2A, represented by Usmanov, executed the Agreement on August 8, 2023, wherein "A2A agreed to provide transportation services for Beemac" and further "agreed that for each shipment assigned to it by Beemac, [ ] A2A 'shall have the sole and exclusive control of the shipment of [Beemac's] customer from the time it is picked up by [A2A] for transportation until delivery by [A2A] to the consignee.'" (ECF No. 1-2, ¶¶ 7–8) (citing ECF No. 38-2,[2] p. 4); (ECF No. 37, p. 2; ECF No. 40, pp. 1-2). Section 5(A) of the Agreement provides, and A2A agreed, that

---

[1] A2A filed a Motion for Judgment on the Pleadings (ECF No. 26), which the Court will deny. A motion for judgment on the pleadings is governed by Rule 12(c) of the Federal Rules of Civil Procedure, which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "Granting a 12(c) motion results in a determination on the merits at an early stage in the litigation," and thus, the movant is required "'to clearly establish [ ] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)). Here, discovery has concluded and the Court has a fully developed record. It need not decide a motion based solely on pleadings particularly when all the arguments raised in A2A's motion are also raised in relation to the parties' arguments on summary judgment.

[2] The Agreement is attached to several different filings on the docket. For purposes of consistency, the Court will cite to ECF No. 38-2 when referring to the Agreement.

A2A would "'assume[] the liability of a motor common carrier ... for any loss, damage or delay' of a shipment assigned to it by Beemac," Section 5(D) states that any "[e]xclusions from coverage contained in [A2A's] Cargo Insurance as required herein shall not affect [A2A's] liability for freight loss, damage, or delay," and Section 8 contains the indemnification provision in which A2A agreed it was obligated to indemnify Beemac. (ECF No. 38-2, p. 4). The Agreement explicitly provides that Pennsylvania law will apply, and the parties further agreed to select Pennsylvania courts as a forum for any controversy arising out of the Agreement. (*Id.* at 7).

**B. Facts pertaining to the parties' conduct.**

On February 25, 2025, Beemac's customer Argus Logistics LLC ("Argus"), representing Bomag Americas, Inc. ("Bomag"), "assigned to Beemac [ ] a load of commercial equipment, which was owned by Bomag, to broker for transportation from South Carolina to Montana." (ECF No. 36, p. 3; ECF No. 40, pp. 2-3) On February 27, 2025, Beemac brokered the load to A2A for transportation of the equipment, which A2A accepted, pursuant to the terms contained in the Agreement. (ECF No. 37, p. 5; ECF No. 40, p. 3). On February 28, 2025, Usmanov picked up the equipment in South Carolina – in other words, A2A took possession of the load – and undertook its transportation to Montana. (ECF No. 36, pp. 3–4; ECF No. 37, pp. 5-6; ECF No. 40, p. 3). On March 2, 2025, while A2A had "exclusive custody and control" over the equipment, Usmanov struck the underpass of a bridge in Illinois. (ECF No. 37, p. 6; ECF No. 40, p. 3). Following the incident, Usmanov sent an email to Beemac in which he "admitt[ed] that the truck he was driving on behalf of A2A struck the bridge and damaged Bomag's equipment." (ECF No. 37, p. 6; ECF No. 40, p. 3); (ECF No. 38-9).

On March 4, 2025, in response to Usmanov's accident, "Argus submitted a notice of claim on behalf of Bomag to Beemac for damage to the equipment in the amount of $623, 360.80" (*Id.*);

(ECF No. 38-10). Argus sent a second letter to Beemac on May 15, 2025, making another demand for Beemac to cover the damage. (*Id.*); (ECF No. 38-11). On March 19, 2025, pursuant to the Agreement, Beemac sent a letter to A2A, informing it of Argus's damage claim and demanding indemnification for the damage to the Bomag equipment. (ECF No. 37, p. 7; ECF No. 40, p. 4; ECF No. 38-12). Usmanov received and read the letter on March 19, 2025. He knew Beemac was making a demand for indemnification under the Agreement, and did not respond. (ECF No. 37, p. 7; ECF No. 40, p. 4).

Subsequently, on November 30, 2025, A2A and its insurance carrier unilaterally obtained a release for A2A, and not Beemac, from Bomag for its damage claims. A2A's insurance carrier provided Bomag with $250,000 in exchange for A2A's release. The agreement between A2A and Bomag further preserved Bomag's right to pursue the remaining cost of its damage claim. (ECF No. 37, p. 9; ECF No. 40, pp. 5-6; ECF No. 38-13).

## II. LEGAL STANDARD

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the

movant's proof[]" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

The Court would note that Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322; *see also Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994) (stating that the nonmoving party must "point[] to sufficient cognizable evidence to create material issues of fact concerning every element as to which [he/she] will bear the burden of proof at trial"). "[A] complete failure of proof concerning an essential element" of the non-movant's claim "necessarily renders all other facts immaterial," and thus "there can be 'no genuine [dispute] as to any material fact'" sufficient to survive the motion. *Id.* at 323. Moreover, judgment as a matter of law becomes appropriate. *See id.; accord Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) ("[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law.").

## III. ANALYSIS

### A. Beemac's declaratory judgment claim.

Beemac seeks to enforce the indemnification provision of the Agreement for the damage caused by Usmanov to the Bomag equipment during the execution of A2A's transportation services. For the reasons set out below, the Court finds that A2A has failed to establish a genuine issue of material fact as to Beemac's claim and is unpersuaded by A2A's arguments against

indemnification. Further, the Court finds that A2A has failed to establish a genuine issue of material fact to survive summary judgment on its counterclaim against Beemac.

***1. Beemac is entitled to summary judgment on its request for declaratory judgment as to A2A's duty to indemnify under the terms of the Agreement.***

Beemac asserts that, pursuant to the terms in the Agreement, "A2A clearly and unequivocally agreed to defend, indemnify, save and hold harmless Beemac Logistics from and against, *inter alia*, any claims brought against Beemac [ ] arising from or in connection with loss or damage to property related to A2A's performance of services under the [Agreement]." (ECF No. 36, p. 1). It further argues that, as established by the record, "A2A's obligations under Sections 8 and 5 [of the Agreement] were triggered after Beemac [ ] submitted a formal demand to A2A, informing A2A that it was obligated to defend, indemnify, save and hold Beemac [ ] harmless" for claims made by Argus and/or Bomag in connection with A2A's damage to the Bomag equipment. (*Id.* at 9). Beemac contends that the terms of the Agreement "are clear and unequivocal and not subject to competing reasonable interpretations." (*Id.* at 8).

In opposing summary judgment, A2A takes the position that the indemnity provision at Section 8 of the Agreement "would not apply to the loss or damage to freight in interstate shipment because such loss and damage is completely and specifically covered under Section 5 of the [Agreement], titled "'***Freight Loss, Damage, or Delay***.'" (ECF No. 41, p. 6); (ECF No. 38-2, p. 4).[3] A2A supports its argument through use of contractual interpretation canons, including

---

[3] Section 5 of the Agreement states:

> A. CARRIER shall have the sole and exclusive control of the shipment of BEEMAC's customer from the time it is picked up by CARRIER for transportation until delivery by CARRIER to the consignee. CARRIER assumes the liability of a motor common carrier as defined in 49 C. § 11706 (Carmack Amendment liability) for any loss, damage or delay. Any claim filed by BEEMAC on behalf of its customer against CARRIER for loss, damage or delay will be subject to the regulations set forth in 49 C.F.R. Part 370. In the

*generalia specialibus non derogant* and *contra proferentem*. (ECF No. 41, p. 7). The former, according to A2A, establishes that Section 8 "does not apply to the loss or damage of cargo/freight in interstate shipment," but "applies to other matters not at issue in this lawsuit such as the Carrier causing damage to the shipper's premises or improvements thereupon …." (*Id.*) (citing ECF Nos. 38-2, p. 5; 42-2, pp. 24–26). A2A asserts that the latter canon emphasizes that "ambiguity is interpreted against the drafter," the drafter being Beemac. (*Id.*) (citing *Colorcon, Inc. v. Lewis*, 792 F. Supp. 2d 786, 797 (E.D. Pa. 2011)).

While the Court agrees that an indemnity provision must be interpreted against the party seeking indemnification, the Court finds that the indemnity provision at issue here is not ambiguous. *See Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 371 (3d Cir. 2001) (stating that "under Pennsylvania law, the court must strictly construe the scope of an indemnity contract against the party seeking indemnification." *Brown v. Moore*, 247 F.2d 711, 722 (3d Cir. 1957)). Section 8 of the Agreement reads as follows:

> 8. **<u>Indemnification by CARRIER</u>**. CARRIER agrees to defend, indemnify, save and hold harmless BEEMAC and BEEMAC's customers from and against any and all manners of penalties, fines, assessments, claims, losses, damages or judgments arising from operation of the CARRIER's vehicles or CARRIER'S performance or failure to perform under this Agreement. In addition, CARRIER agrees to indemnify, save and hold harmless and defend BEEMAC and BEEMAC's customers and BEEMAC's officers, directors or employees, from and against any and all claims for loss, damage or injury, suits, actions, cause of action, legal proceedings, or other liabilities of any kind or nature brought against BEEMAC and/or BEEMAC's customers and/or BEEMAC's officers, directors or employees

---

> event CARRIER is obligated to pay BEEMAC or its customer for any claim against CARRIER or which results in a judgment against CARRIER rendered by a court of competent jurisdiction and which CARRIE[R] [*sic*] fails to pay, BEEMAC may withhold from any amount due from BEEMAC to CARRIER the amount of such claim. If BEEMAC is required to enter suit against the CARRIER to recover for loss, damage or delay and BEEMAC obtains a judgment against the CARRIER, the CARRIER agrees to pay BEEMAC's reasonable attorney's fees.

(ECF No. 38-2, p. 4).

> arising from or in connection with loss or damage to property or injury or death to persons, including, but not limited to, employees of BEEMAC, BEEMAC's customers or CARRIER, occurring during or related to the course of CARRIER's performance of services under this Agreement.

(ECF No. 38-2, p. 5).

"[A] contractual provision in the non-insurance context that includes an indemnification provision that contains a duty to defend is to be interpreted by general contract principles (including those relevant to indemnification claims)." *Cottman Ave. PRP Group v. AMEC Foster Wheeler Env't Infrastructure Inc.*, 439 F. Supp. 3d 407, 440 (E.D. Pa. 2020) (quoting *Air Prods. & Chems., Inc. v. Proctor & Gamble Mfg. Co.*, No. 18-CV-4878, 2019 WL 4751885, at *17 (E.D. Pa. Sept. 30, 2019)). Under Pennsylvania law, courts are required to "narrowly interpret indemnity provisions, in light of the parties' intentions as evidenced by the entire contract." *Fox Park Corp. v. James Leasing Corp.*, 641 A.2d 315, 318 (Pa. Super. 1994) (citing *First Nat'l Bank of Spring Mills v. Walker*, 137 A. 257 (Pa. 1927)). The United States Court of Appeals for the Third Circuit has clarified that when an "indemnity clause is clear and unambiguous, [ ] the intentions of the parties should be ascertained primarily by looking to the language used in the agreement," but if a court finds ambiguity, it may then "consider the circumstances under which the contract was signed." *Jacobs Constructors, Inc.*, 264 F.3d at 371 (first citing *Fallon Elec. Co., Inc. v. The Cincinnati Ins. Co.*, 121 F.3d 125, 127 (3d Cir. 1997) and then citing *E. Crossroads Ctr., Inc. v. Mellon-Stuart Co.*, 205 A.2d 865, 866 (Pa 1965)). However, "[t]he mere fact that the parties do not agree upon the proper interpretation of an indemnity clause does not necessarily render the clause ambiguous." *Id.* (citing *Metzger v. Clifford Realty Corp.*, 476 A.2d 1, 4 (Pa. Super. 1984)).

A2A cites a basic rule of contract interpretation, that "[a] contract is to be ***considered as a whole***, and, if possible, all its provisions should be given effect; while a contract's provisions must be interpreted with reference to the whole ***the specific controls the general***; and a contract should

be construed so as to give effect to its general purpose." (ECF No. 41, p. 7) (emphasis in original) (quoting *Capitol Bus Co. v. Blue Bird Coach Lines, Inc.*, 478 F.2d 556, 560 (3d Cir. 1973)). A2A contends that Section 5, relating specifically to freight or cargo damage, controls the more general indemnity provision that A2A believes covers claims that are not specifically covered elsewhere in the Agreement. (*Id.* at 6–7). Moreover, A2A notes that "Section 8 does not mention 'cargo' or 'freight' or its damage or delay." (*Id.* at 6).

Although Pennsylvania courts have instructed that "when specific or exact provisions" in a contract "seem to conflict with broader or more general terms, the specific provisions are more likely to reflect the intent of the parties," and it has also been established that "[c]ourts are not to interpret one provision of the contract in a way that annuls a different provision of it." *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 350 (3d Cir. 2018) (first quoting *Musko v. Musko*, 697 A.2d 255, 256 (Pa. 1997) and then citing *Capek v. Devito*, 767 A.2d 1047 (Pa. 2001)). The Court agrees with Beemac that the indemnity provision does not conflict with Section 5 of the Agreement. In fact, the two provisions, taken together, reveal the intention of the contracting parties – to limit Beemac's potential liability under specific circumstances. *See Com. ex rel. Schnader v. Evans*, 156 A. 139, 140 (Pa. 1931) ( stating that "where a clause or sentence shows on its face that it is intended to express more specifically a previously stated duty, or to declare a new one and impose a liability for failure to perform it, it cannot be property construed as limiting the scope of either duty or liability." (citing *West v. Lysle*, 153 A. 131, 132 (Pa. 1931)).

The Third Circuit reiterated that "the well established principles of contraction construction" require the Court "to read, if possible, all provisions of a contract together as a harmonious whole." *Orion Drilling Co., LLC v. EQT Prod. Co.*, 826 F. App'x 204, 212 (3d Cir. 2020 (quoting *Engelhard Corp. v. N.L.R.B.*, 437 F.3d 374, 381 (3d Cir. 2006)). Section 8 of the

Agreement is an unambiguous indemnification provision that permits Beemac to enforce A2A's obligations to "defend, indemnify, save and hold harmless" Beemac and/or its customers, officers, directors or employees, from and against "any and all claims for loss, damage or injury, suits, actions, cause of action, legal proceedings, or other liabilities of any kind or nature brought against" it (or them, if multiple) "arising from or in connection with loss or *damage to property … occurring during or related to the course of CARRIER's performance of services under this Agreement.*" (ECF No. 38-2, p. 6) (emphasis added). Section 5 of the Agreement provides specific obligations that A2A has in the event of freight loss, damage, or delay. (*Id.* at 4).

In Beemac's response to A2A's additional concise statement of material facts, it notes that Section 5 of the Agreement "does not state that it is 'specifically and exclusively applicable' to 'any loss, damage or delay to freight,'" as A2A otherwise contends. (ECF No. 44, p. 2). Further, Beemac cites the language of the indemnity provision at Section 8 of the Agreement, "which clearly applies in the event of damage to property which includes freight." (*Id.*). Beemac emphasizes that A2A overlooked Section 5(B) of the Agreement, which states: "No other limitation of liability shall apply unless specifically agreed to in writing by BEEMAC prior to [A2A's] receipt of the specific shipments to which such limitation applies …." (*Id.* at 5).[4] Beemac

[4] The Court rejects A2A's position that the Carmack Amendment precludes Beemac from asserting a declaratory judgment claim. The Carmack Amendment governs interstate shipping. *Certain Underwriters at Int. at Lloyds of London v. United Parcel Serv. of Am., Inc.*, 762 F.3d 332, 335 (3d Cir. 2014). It states that a "carrier providing transportation or service ... or any other carrier that delivers the property [is] liable to the person entitled to recover under the receipt or bill of lading" for "the actual loss or injury to the property." 49 U.S.C. § 14706(a)(1). However, while the Carmack Amendment applies to carriers, it does not apply to brokers. It does not hold liable "a broker—someone who merely arranges for transportation." *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, 767 F. App'x 284, 285 (3d Cir. 2019); *AMG Res. Corp. v. Wooster Motor Ways, Inc.*, 796 F. App'x 96, 99 (3d Cir. 2020). Accordingly, the Carmack Amendment does not preempt state-law claims against brokers. At issue here are A2A's obligations under the Agreement, which falls outside the Carmack Amendment as it is a contract between a broker and a carrier establishing an ongoing brokerage agreement.

argues that it "did not agree in writing to limit [A2A's liability under the [Agreement] to just Section 5 and [A2A] has come forward with no evidence that it did." (*Id.*). The Court agrees and further finds that A2A has not pointed to any evidence in the record to support its arguments for purposes of creating a genuine issue of fact to overcome summary judgment.

The Court concurs with Beemac that "A2A's contention that Section 8 'does not mention 'cargo' or 'freight'" is irrelevant. Beemac directs the Court to the deposition testimony of William O'Brien ("O'Brien"), the Director of Safety and Compliance of Beemac, Inc., serving as its Federal Rule of Civil Procedure 30(b)(6) witness. (ECF No. 43, p. 4). O'Brien specifically confirms that the word "property," as included in Section 8 of the Agreement, means freight or cargo. (ECF No. 45-2, p. 13). And although the terms "freight" or "property" included in Sections 5 and 8 of the Agreement are undefined, they "are to be given their ordinary meaning" for purposes of interpreting the contract. *Kripp v. Kripp.*, 849 A.2d 1159, 1163 (Pa. 2004) (citation omitted). As used in Section 5 of the Agreement, "freight" is defined as "Goods transported by water, land, or air; CARGO."[5] Black's Law Dictionary, *freight* (12th ed. 2024). The term "property," included in Section 8 of the Agreement, is defined as "Collectively, the rights in a valued resource such as land, chattel, or an intangible." Black's Law Dictionary, *property*. A2A fails to provide support for its assertion that Section 5 limited the term "property" in Section 8. Freight and cargo are chattel, and thus property per the ordinary meaning of the term.

A2A additionally asserts that employing the *generalia specialibus non derogant* canon, used to aid contract interpretation, indicates that "Section 8 clearly does not apply to the loss or damage of cargo/freight in interstate shipment." (ECF No. 41, p. 7) (citing *Capitol Bus Co.*, 478

[5] The term "cargo" is not used in Section 5 but is included as a term in the definition of "freight." Cargo is accordingly defined as "Goods transported by a vessel, airplane, or vehicle." Black's Law Dictionary, *cargo*.

F.2d at 560). It argues that Section 8 of the Agreement applies to other matters, such as those listed in the provision, including a "Carrier causing damage to the shipper's premises or improvements thereupon or 'injury or death to persons.'" (*Id.*) (citing ECF No. 38-2, p. 5; ECF No. 42-2, pp. 24–26). As an initial matter, the Court holds that Section 8 of the Agreement uses the term "damage to *property*" and includes no language limiting the type of property to "the shipper's premises." (ECF No. 38-2, p. 5). A2A cites to O'Brien's deposition in an attempt to support its interpretation that the damage must be to the shipper's premises; however, the testimony does not prove, or even imply, that Section 8 of the Agreement only applies to "situations where a carrier goes onto the shipper's property and something happens that results in damage." (ECF No. 42-2, p. 25). In fact, O'Brien, who has "dealt with other freight claims with Section 8," explained that he is "sure" that there have been instances where "the carrier has run into something and caused damage to a building … a fence or a lawn" but he "couldn't cite a specific example. He further states that Section 8 "[m]ainly [deals] with freight and the cargo." (*Id.* at 26).

A2A also overlooks the language in Section 8 of the Agreement that explicitly states, "CARRIER agrees to indemnify, save and hold harmless and defend BEEMAC and BEEMAC's customers … from and against *any and all claims for loss, damage* or injury, suits, actions, cause of action, legal proceedings, *or other liabilities of any kind or nature brought against BEEMAC* and/or BEEMAC's customers …." (ECF No. 38-2, p. 5) (emphasis added). The inclusion of "any and all" along with "other liabilities of any kind or nature" indicates there was no intention to limit the scope of claims that trigger A2A's duty to indemnify. Accordingly, A2A cannot narrow the types of applicable claims by citing the examples given (and even imputing its own terms) while leaving out surrounding language. A2A seeks to manipulate the language for the benefit of its

position, but the language is plain and unambiguous. The Court will not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Lenau v. Co-eXprise, Inc.*, 102 A.3d 423, 430 (Pa. Super. 2014) (quoting *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (interpreting an insurance policy)).

As a final point, the Court notes that A2A continuously restates its legal arguments as fact in its concise statement of material facts. *See* (ECF No. 40, ¶ 56, 57, 60) (stating "Section 5 of the [Agreement] provides the complete list of remedies available to [Beemac] for freight loss, damage, or delay," is an allegation). The Court finds that any facts provided by A2A, taken from the record, do not raise a genuine dispute of fact. To the extent that A2A asserts that Beemac "has not been required to enter suit against A2A [ ] because it has not been identified as a liable party in connection with the damaged cargo in interstate commerce" (ECF No. 41, p. 8) (citing ECF No. 40, ¶¶ 67–77),[6] the Court finds this argument to be spurious. A2A's citation to O'Brien's deposition testimony does not create a genuine issue of material fact as to Beemac's liability for the damaged cargo. A2A cites to O'Brien's statement confirming that Beemac Logistics, LLC is a broker, and Beemac Inc. is a carrier. (ECF No. 42-2, pp. 27–28). A2A disregards O'Brien's

---

[6] This is the standing issue that A2A raised in its motion for judgment on the pleadings. Its argument that standing does not exist is based in part on its contention that Beemac Logistics was not named in the case of *Bomag Americas, Inc. v. Beemac, Inc.*, Case No. 2:25-cv-12931 currently pending in the United States District Court for the Eastern District of Michigan (the "Bomag Lawsuit"). Beemac has advised the Court that, on August 28, 2026, Bomag filed a motion and brief in support to amend its complaint in the Bomag Lawsuit to add Beemac Logistics as a named defendant pursuant to Federal Rules of Civil Procedure 15(a)(2), 16 and 20(a)(2). (ECF No. 46, p. 3; ECF No. 46-1). The Court will take judicial notice of what has occurred in the Bomag Lawsuit as it is a matter of public record, and it holds that there is no need for Beemac to file an amended response to Paragraphs 75 and 76 of A2A's Additional Statement of Material Facts. Its request to do so will be denied as moot. The Court would further note that in declaratory judgment cases, a plaintiff has Article III standing if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *The St. Thomas–St. John Hotel & Tourism Ass'n v. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000). As explained herein, those requirements are met in this case.

testimony that Jim Poole, a "claims analyst" at Beemac Inc., to whom Argus's attorneys addressed the May 14, 2025 letter to, was "providing the claims administration for Beemac Logistics" and his signature line identifies Beemac Trucking (another name for Beemac Inc.). O'Brien confirms that he was responding to Argus communications "on behalf of Beemac Logistics" which "is done through the services that Beemac, Inc. provides to Beemac Logistics." (ECF No. 45-2, pp. 19–20). A2A fails to cite any evidence in the record that disputes this testimony. The Court further notes that A2A admits that "On June 3, 2025, Counsel for Argus and Bomag sent another letter regarding Argus Claim No. C251781 *to counsel for Beemac Logistics* …." (ECF No. 40, ¶ 72).

Although A2A maintains that Beemac *Inc*., not Beemac *Logistics*, is the identified liable party, its argument is not supported by the record. For example, A2A argues that "[t]he 'notice of claim identifies Beemac Inc.—a trucking company—not Beemac Logistics as the liable party for the damaged cargo," but, as Beemac points out, the notice of claim does not state that Beemac Inc. is the liable party; instead, it merely inputted Beemac Inc. into the "Carrier" section of the form. (ECF No. 40, ¶ 70) (citing ECF No. 38-10). Finally, A2A fails to acknowledge O'Brien's testimony that Argus, rather than Beemac, prepared the notice of claim and "the entry of Beemac, Inc. as a carrier was a mistake." (*Id.* at 16).

For these reasons, the Court holds that declaratory judgment in favor of Beemac is appropriate.

***2. A2A's prevention doctrine argument fails to defeat Beemac's motion for summary judgment.***

A2A further attempts to defeat Beemac's claim for declaratory judgment, and argues its motion for summary judgment fails, "because Beemac [ ] prevented A2A [ ] from obtaining the necessary insurance for the shipment." (ECF No. 41, p. 8). As explained below, the Court does not agree with A2A's argument that the prevention doctrine applies.

"Pennsylvania's prevention doctrine requires that the actions alleged to have prevented the occurrence of a condition *actually caused* the party subject to the condition to be unable to fulfill it." *Utica Mut. Ins. Co. v. Cincinnati Ins. Co.*, 362 F. Supp. 3d 265, 270 (E.D. Pa. 2019) (emphasis in the original) (citing *Arlotte v. Nat'l Liberty Ins. Co.*, 167 A. 295, 296 (Pa. 1933)). Courts have consistently held, in an effort to ensure and promote fairness and equity, that "when one party to a contract unilaterally prevents the performance of a condition upon which his own liability depends, the culpable party may not then capitalize on that failure." *Apalucci v. Agora Syndicate, Inc.*, 145 F.3d 630, 634 (3d Cir. 1998) (citing *St. Louis Dressed Beef & Provision Co.*, 201 U.S. 173, 181 (1906); *Borough of Nanty–Glo v. American Sur. Co. of N.Y.*, 175 A. 536, 537 (Pa. 1934)). And, as a United States District Court for the Eastern District of Pennsylvania explained, a party may invoke the prevention doctrine regardless of whether the preventing party's conduct was deliberate or inadvertent. *Connelly Constr. Corp. v. Travelers Cas. & Sur. Co. of Am.*, No. 16-CV-555, 2018 WL 3549281, at *4 (E.D. Pa. July 24, 2018) (citing Restatement (Second) of Contracts § 245 (1981)).

A2A argues that the prevention doctrine applies here, where Beemac allegedly "failed to inform A2A [ ] of the value of the cargo, which did not allow an opportunity to obtain additional cargo insurance." (ECF No. 41, p. 8) (citing ECF No. 40, ¶¶ 61–66). Citing to the February 25, 2025 letter Argus sent to Beemac, A2A asserts that Beemac was informed that "the cargo was valued at $1,114,411," and Beemac failed to give notice to A2A of the value, which Beemac "unfortunately missed" when it received the award of shipment. (ECF Nos. 41, p. 9; 40, ¶¶ 62, 64) (citing ECF Nos. 42-4 & 42-2, p. 29). And, in a footnote, A2A asserts that "[t]he Commercial General Liability [("CGL")] coverage required under the [Agreement] specifically excluded the

type of cargo being transported leaving only cargo insurance as a viable option." (*Id.* at 8 n.6) (citing ECF No. 42-2, pp. 15–17).

The Court recognizes that because the cargo value was "missed," A2A did not have the chance to obtain additional insurance. However, Beemac's failure to provide notice did not prevent A2A from performing its obligations under the Agreement. The Court need not look further than the language of the Agreement itself. Section 6 of the Agreement includes the requirement that A2A, as a carrier, "shall maintain, at its expense, insurance as follows … B. [CGL] Insurance covering the transportation of shipments and other operations under this Agreement in an amount not less than $1,000,000.00 (U.S. Dollars) per occurrence. Such insurance shall also cover CARRIER's contractual liability under this Agreement." (ECF No. 38-2, p. 4). Although neither party cites to Sections 5(D) or 6(C) of the Agreement, the Court finds that they are indicative of the parties' intent and A2A's obligations relating to insurance procurement. Section 5(D), discussing freight loss, damage or delay, states that "Exclusions from coverage contained in CARRIER's Cargo Insurance as required herein shall not affect CARRIER's liability for freight loss, damage, or delay." (*Id.*). Section 6(C) further obligates A2A, as the carrier, to obtain "All Risk Broad Form Motor Truck Cargo Legal Liability ("Cargo") insurance in an amount not less than $1,000,000.00 (U.S. Dollars) per occurrence. The coverage provided under the policy shall have no exclusions or restrictions of any type that would foreseeably preclude coverage relating to cargo claims…." (*Id.*). The Agreement makes clear that A2A had a duty to procure insurance, and whether its failure to obtain additional insurance was due to Beemac's failure to give notice of the cargo value or because A2A accepted a policy providing less coverage than necessary to cover the claim, Beemac did not prevent A2A from performing under the Agreement. *See Hackman v. Moyer Packing*, 621 A.2d 166, 169 (Pa. Super.

1993) (explaining that defendant was required to purchase insurance coverage per a provision of the parties agreement. The insurance procurement provision, however, "was a provision separate from [defendant's] agreement to indemnify [plaintiff]." Defendant's acceptance of a policy that was insufficient to cover claim "did not constitute a waiver of the benefits accruing under [defendant's] agreement to indemnify." *Id.*). Further, the Court holds that the indemnification provision of the Agreement does not limit, through express language or by implication, A2A's obligation to indemnify Beemac to the amount of insurance coverage it obtained. (ECF No. 43, pp. 8–9) (citing ECF No. 38-2, p. 5). The Court agrees with Beemac that A2A's indemnification obligations were not dependent upon receipt of the cargo's value. (*Id.*).

A2A asks the Court to find that Beemac was obligated, by way of a condition precedent, to give notice of the cargo's value to trigger A2A's indemnification obligation. A condition precedent requires that there be some "condition which must occur before a duty to perform under a contract arises." *Acme Mkts., Inc. v. Fed. Armored Express, Inc.*, 648 A.2d 1218, 1220 (Pa. Super. 1994). "While the parties to a contract need not utilize *any* particular words to create a condition precedent, an act or event designated in a contract will not be construed as constituting one unless that clearly appears to have been the parties' intention" *Id.* (citation omitted). Where, as here, the indemnification provision is unambiguous and there is no indication that Beemac and A2A intended for the indemnification provision to be contingent upon Beemac giving notice of the cargo value for purposes of A2A having the "opportunity" to obtain additional insurance, the Court will not read such a condition into the Agreement. *See id.*; (ECF No. 41, p. 8).[7] The Court

---

[7] Although the Court need not look outside the Agreement itself to determine that the prevention doctrine is inapplicable, O'Brien's testimony, which A2A cites for support, does not change the Court's analysis. (ECF No. 41, p. 9). Despite O'Brien's testimony that Beemac could have asked Argus whether it needed additional insurance and communicated Argus's response to A2A, O'Brien also states that generally Beemac obtains additional insurance "when requested by their

holds that Beemac's failure to notify A2A of the cargo's value did not cause A2A to be unable to fulfill its obligation to indemnify Beemac. Thus, A2A cannot successfully invoke the prevention doctrine.

For the foregoing reasons, the Court will grant Beemac's motion for summary judgment as to its declaratory judgment claim. Pursuant to Sections 5 and 8 of the Agreement, the Court holds that A2A is obligated to fully defend, indemnify, save and hold Beemac harmless for any claims, losses, damages, judgments or injury, suits, actions, causes of action, legal proceedings, or other liabilities of any kind or nature asserted by Argus and/or Bomag for the equipment that was damaged by A2A. It further holds that, pursuant to Section 5(A) of the Agreement, A2A is obligated to reimburse Beemac for the attorneys' fees it incurred in this action. The Court will issue a scheduling order for the filing of a motion.

**B. A2A's counterclaim for breach of contract.**

Beemac finally asserts that it "is entitled to summary judgment on A2A's counterclaim because the undisputed record establishes that A2A lacks standing to pursue" it. (ECF No. 43, p. 11). Beemac argues that A2A assigned "its rights to any payment allegedly due to A2A for the load at issue" to a third party, OTR Capital, LLC ("OTR"). (*Id.*). The Court agrees with Beemac's position, and accordingly grants its motion for summary judgment on A2A's counterclaim for breach of contract.

"Under Pennsylvania law, where assignment of a contractual right is 'both sanctioned and contemplated,' the assignee 'assumes all of the assignor's rights as well as the defenses, set-offs,

---

customer," or if there is a higher value load, it would be communicated that additional insurance is required. (ECF No. 42-2, p. 31). A2A overlooks O'Brien's further comments relating to additional insurance. Regardless, neither the record nor the Agreement indicate that A2A is required to have an opportunity to obtain additional insurance in order to indemnify Beemac under Section 8.

and counterclaims of the obligor, provided the latter are based on facts existing at the time of the assignment." *KORE Cap. Corp. v. StoneMor Operating LLC*, 608 F. Supp. 3d 208, 214 (E.D. Pa. 2022) (quoting *Front St. Dev. Assoc., L.P. v. Conestoga Bank*, 161 A.3d 302, 312 (Pa. Super. 2017)). A2A maintains that OTR is "used to facilitate payments in the transportation industry," and the fact that it did so "does not remove A2A['s] standing to bring a claim against Beemac [ ]." (ECF No. 41, p. 13). A2A's assertions are not supported by law.

"In an assignment, the nature of the particular assignment determines the identity of the real party .... the assignee is usually the real party in interest and an action must be prosecuted in his name." *Wilcox v. Register*, 207 A.2d 817, 820 (Pa. 1965). As documented in the letters Beemac received on March 10, 2025, and March 11, 2025, OTR provided A2A with "a working capital line of credit" in exchange for A2A's assignment of "all present and future Accounts Receivable" with Beemac. (ECF No. 38-14, p. 3; ECF No. 38-15, p. 3). Such an assignment is governed by § 9-406 of the Uniform Commercial Code, which Pennsylvania has adopted by statute at 13 Pa. C.S.A. § 9406. As provided by § 9406:

> an account debtor on an account, chattel paper or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, signed by the assignor or the assignee, that the amount due or to become due has been assigned and that the payment is to be made to the assignee. After the receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor.

13 Pa. C.S.A. § 9406(a). The record indicates that Beemac was sent two separate notices of A2A's assignment to OTR of its accounts receivable. (ECF Nos. 38-14, 38-15). Moreover, both letters were signed by the assignor, Usmanov, on behalf of A2A. (*Id.*). Usmanov additionally testified that he "understood [notice of assignment] letter [(ECF No. 38-14)] was sent to Beemac [ ] stating the payment for this load was due to OTR" and he has "done nothing to revoke" the assignment. (ECF No. 38-1, pp. 29–30).

Further, A2A contends that both the March 10, 2025 and March 11, 2025, letters specifically state that "Payments made to any party except OTR Solutions will not relieve ***your obligation for Accounts Payable due A2A*** …," meaning that the assignment did not remove A2A's standing. (ECF No. 41, p. 13) (emphasis in original) (citing ECF Nos. 38-14, p. 3 & 38-15, p. 3). As Beemac states, however, that language cuts directly against A2A's assertion. It only names A2A as the original account holder, and further reiterates that OTR has the exclusive right to the $18,000 A2A purports is owed. If Beemac were to pay A2A under the terms of the assignment, it would not relieve its obligation to pay OTR as the assignee.

The Court holds that, OTR, rather than A2A, is the real party in interest for purposes of bringing a claim for payments due under the Agreement. Since Beemac received notice of the assignment, A2A no longer has standing to bring its counterclaim. Beemac's motion for summary judgment as to A2A's counterclaim will be granted.

## IV. Conclusion

For the foregoing reasons, Beemac's motion for summary judgment – for its declaratory judgment claim and A2A's counterclaim – will be granted. A2A's motion for judgment on the pleadings will be denied. Orders of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated: 9/14/26